IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAJUAN SAUNDERS,                         :
                    Petitioner           :
                                         :
    vs.                                  :     CIVIL NO. 1:CV-13-3056
                                         :
DONNA ASURE, et al.                      :      (Judge Caldwell)
                    Respondents          :
                                         :
                                         :

*M E M O R A N D U M*

I.  *Introduction*

        Petitioner, Dajuan Saunders, an inmate at the state correctional institution

in Waymart, Pennsylvania, has filed a pro se petition for a writ of habeas corpus under 28

U.S.C. § 2254.  The petition challenges Saunders' conviction in the Court of Common

Pleas of Lackawanna County, Pennsylvania, to a second offense of driving under the

influence (DUI) of alcohol with the highest rate of blood alcohol content, at least .16% or

higher.  Petitioner pled guilty to the offense and was sentenced to one to five years of

imprisonment.

        The petition made four claims for relief.  In his reply brief (Doc. 34) and in a

document he styled as a "supplemental response" (Doc. 36) to Respondents' answer to

the petition, Saunders presented fourteen new claims against his conviction and

sentence.  We examined the new claims for timeliness and determined that five were

timely but that the others were barred by the statute of limitations.  *Saunders v. Asure*,

2015 WL 3737166 (M.D. Pa. Jun. 15, 2015).  In total then, Petitioner presents nine

grounds for relief, which are as follows:

> Ground One: Petitioner's sentence violates the Eighth
> Amendment and the Due Process Clause of the Fourteenth
> Amendment because Petitioner did not receive the drug and
> alcohol evaluation that state law required before sentence
> was imposed.

> Ground Two: the trial court lacked subject-matter jurisdiction
> over the case because Petitioner had never been given a
> copy of the "criminal affidavit" against him so that he could
> have known how his rights were violated.

> Ground Three: trial counsel was ineffective in not providing
> Petitioner with a requested copy of the affidavit of probable
> cause.

> Ground Four: Petitioner's guilty plea is invalid for two reasons:
> (1) there was no subject-matter jurisdiction based on the lack
> of service of the criminal affidavit; and (2) Petitioner waived
> his right to a preliminary hearing in return for a plea of guilty to
> a first offense DUI, but at the guilty plea hearing it was
> changed to a second offense DUI with no amendment prior to
> the plea or on the record.

> Ground Five: The court never told Petitioner during the oral
> guilty-plea colloquy that the Commonwealth had to prove (a)
> that his BAC was at least 0.16% within two hours of driving
> and (b) that he had driven, operated and was in physical
> control of a motor vehicle.

> Ground Six: Neither the court nor trial counsel told Petitioner
> his BAC had to be taken within two hours of driving.

> Ground Seven: Petitioner did not understand the nature of the
> charge to which he was pleading guilty because he did not
> receive the criminal complaint against him.

> Ground Eight: The Commonwealth breached the plea
> agreement it made with Petitioner.

Ground Nine: Petitioner's trial counsel was ineffective because he did not allow Petitioner to see the criminal complaint so that Petitioner could see if it was filed within five days of his release.

We have decided that relief is not available on any of the grounds except Ground Six, and on that ground we will require further briefing before resolving it.

II.  *Background*

On April 26, 2011, a police officer with the Scranton Police Department filed a criminal complaint against Petitioner.  (Magisterial District Judge, No. MJ-45103-CR-0188-2011).[1]  The complaint, accompanied by the officer's affidavit of probable cause, charged Petitioner with two offenses occurring on November 20, 2010.  (Doc. 36, ECF pp. 5-9).  The first offense was a violation of 75 Pa. Cons. Stat. Ann. § 3802(c) and charged Petitioner with driving under the influence (DUI) of alcohol, "highest rate of alcohol" . . . after imbibing a sufficient amount of alcohol such that the alcohol concentration in the actor's blood or breath was .16% or higher within two hours after the actor had driven, operated or been in actual physical control of the movement of the vehicle."  (*Id.*, at ECF p. 6).  The complaint charged that Petitioner's blood alcohol content (BAC) "was 0.206% at 20 November 2010/0313 hrs."  (*Id.*).[2]  The affidavit of probable

---

[1]  The docket sheet is available via the Pennsylvania Judiciary's Web Application Portal, http://ujsportal.pacourts. us/default.aspx.

[2]  Section 3802 defines four different DUI offenses for the operation of an automobile. The first two are described as "general impairment" offenses.  In relevant part, they make it illegal to operate a motor vehicle "after imbibing a sufficient amount of alcohol" if: (1) "the individual is rendered incapable of safely driving," section 3802(a)(1); or (2) "the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within

cause alleged Petitioner was driving at 01:05.  (*Id.*, ECF p. 8).  The second offense was a

violation of 75 Pa. Cons. Stat. Ann. § 1543(b), driving while operating privileges were

suspended or revoked.  (*Id.*, ECF p. 6).[3]

On July 11, 2011, the district attorney filed a two-count Information.  Count I

charged Petitioner with a violation of section 3802(a)(1), operating a motor vehicle "after

imbibing a sufficient amount of alcohol such that he was rendered incapable of safe

driving." (Doc. 49-1, ECF p. 3).  Count II charged Petitioner with the section 3802(c)

offense from the criminal complaint, when the BAC was .16% or higher within two hours

of operating the vehicle.  The Information alleged that the "BAC was .206% at 1:05 a.m.

on November 20, 2010." (*Id.*).[4]

On October 28, 2011, Petitioner filled out a written "Guilty Plea Colloquy"

form, in which he indicated the following by giving a "yes" answer to certain questions.

He wanted "to plead guilty to the charges of DUI as laid out in "11CR1456." (Doc. 33-1,

ECF p. 1).  He had the opportunity to read the charges pending against him, and he knew

---

two hours after the individual has" operated the motor vehicle. § 3802(a)(2).  The third offense
is described as "high rate of alcohol," and applies, in relevant part, if "the alcohol concentration
in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after
the individual has" operated a motor vehicle. § 3802(b).  The fourth offense is described as
"highest rate of alcohol," and applies in relevant part if "the alcohol concentration in the
individual's blood or breath is 0.16% or higher within two hours after the individual has"
operated a motor vehicle. § 3802(c).

[3] This procedural background is based on the parties' submissions and the trial court's
docket sheet, *Commonwealth v. Saunders*, No. CP-35-CR-1456-2011, available via the
Pennsylvania Judiciary's Web Application Portal, http://ujsportal.pacourts. us/default.aspx.

[4] As noted, the criminal complaint alleged the BAC was .206% at 3:13 a.m.

"exactly" what he was charged with and "what" he was "pleading to." (*Id.*).  He had "fully discussed" his case with his attorney, was "fully satisfied" that his attorney knew all the facts of his case, and that his attorney had had sufficient time to look into any questions they both might have had about the case. (*Id.*, ECF p. 2).

Petitioner acknowledged his plea agreement with the district attorney was to plead to "DUI Tier 3 – 2nd" with "[a]ll other charges dismissed." (*Id.*, ECF p. 2).[5]  The district attorney made him no other promises in exchange for his guilty plea except the above. (*Id.*, ECF p. 3).  Petitioner was not threatened or coerced to plead guilty, and he would be entering his guilty plea of his own free will. (*Id.*).

Petitioner acknowledged that the court would not be bound by the agreement with the district attorney. (*Id.*).  Petitioner understood the maximum penalty for his offense was "5 years -- $10,000, 18 months suspension [and] 12 months' interlock" and that the minimum penalty was "90 days - $1,500 18 months suspension," and "12 months interlock." (*Id.*).  Petitioner acknowledged that the following were the elements of the crime charged and to which he was pleading guilty:

> A person is guilty of DUI if he drives on the public highways of Pennsylvania while intoxicated to a degree which renders driving unsafe.

---

[5]  A "DUI Tier 3" offense includes a section 3802(c) offense, although other subsections of section 3802 can qualify as a Tier 3 offense.  *See Commonwealth v. Jackson*, 82 Pa. D.&C.4th 225, 228 (Pa. Com. Pl. Ct. Crawford Cnty. 2007).

(*Id.*).  He also admitted the acts constituting the offense but only by making a reference to the Information the Commonwealth had filed in the case.  (*Id.*, ECF p. 4).[6]

Petitioner also recognized that he was waiving certain constitutional rights, among them: his right to trial by a twelve-member jury, his right to a unanimous verdict, the placement of the burden of proof on the Commonwealth beyond a reasonable doubt, his right to cross-examine the Commonwealth's witnesses, and his right not to take the stand.  (*Id.*, ECF p. 2).  Petitioner initialed the first three pages and then signed the form under a paragraph reading:

> I affirm that I have read the above document in its entirety and have reviewed it with my attorney.  I affirm that I am aware of the full implications of entering a guilty plea and nevertheless wish to enter a guilty plea to the above-mentioned offenses.  I further affirm that my signature on this Guilty Plea Colloquy and initials on each page of this document are true and correct.

(*Id.*, ECF p. 4).

Also on October 28, 2011, Petitioner had an oral guilty-plea colloquy with the court.  The prosecutor indicated that Petitioner would be entering a guilty plea to "DUI, a second offense, tier three, which is a misdemeanor one, punishable by 90 days to five years incarceration, a $1500 to $10,000 fine and an 18-month license suspension and 12 months of ignition interlock."  (Doc. 30-2, ECF p. 3, guilty-plea transcript).  The court then questioned Petitioner.  In response to those questions, Petitioner said that he

---

[6]  The answer to question 17 on the form, which is supposed to indicate the district attorney's position on Petitioner's conduct on the date of the crime charged, is: "See Information."  (*Id.*).

had signed and initialed the written guilty-plea colloquy form and that he had read,

understood, and answered truthfully all the questions.  (*Id.*).  He also recognized the

minimum and maximum sentences for the offense: 90 days up to five years, and that,

because of his prior record, his sentencing guideline range was twelve to eighteen

months.  (*Id.*, ECF pp. 4-5).

The court then asked the prosecutor to provide the factual basis for the

plea.  The prosecutor stated:

> The Commonwealth alleges that on or about Saturday,
> November 20, 2010, in this county, the defendant did
> unlawfully drive a vehicle in Scranton at a time when his blood
> alcohol content was .206 percent.

(*Id.*, ECF p. 3).  The court then asked Petitioner:

> Q.  Do you admit that on November 20, 2010, here in the
> city of Scranton, you were driving at a time when your blood
> alcohol was above the legal limit?
>
> A.  Yes.

(*Id.*).  The court then stated it would accept the guilty plea.  Defense counsel then moved

for sentencing, asking that sentence be set at the low end of the guideline range and that

it run concurrently with a previous sentence.  (*Id.*, ECF pp. 4-5).  The court imposed a

sentence of one to five years concurrent to the previous sentence.  (*Id.*, ECF p. 10).  The

offense of driving while operating privileges were suspended or revoked was nolle

prossed.

Petitioner filed a pro se motion for reconsideration of sentence.[7]  (Doc. 30-3, ECF pp. 3-5).  On November 3, 2011, the trial court denied the motion.  (*Id.*, ECF p. 2).  Petitioner did not take a direct appeal.  On January 5, 2012, Petitioner timely filed his first petition under the Pennsylvania Post Conviction Relief Act (PCRA).  42 Pa. Cons. Stat. Ann. §§ 9541-9546.  Counsel was appointed to represent him on the PCRA petition.  PCRA counsel sought to withdraw, (Doc. 30-4, ECF p. 24), and was allowed to withdraw as counsel by order of January 15, 2013.  (Doc. 30-8).  On February 14, 2013, the trial court denied the PCRA petition.  Petitioner did not appeal that order.  On August 14, 2013, Petitioner filed a second PCRA petition.  On December 12, 2013, the trial court denied it as untimely.  (Doc. 30-5, ECF pp. 17-18).[8]  Petitioner did not appeal the denial.

On February 19, 2015, Petitioner filed a third PCRA petition.  In that petition, he raised the same ground for relief raised here as Ground Six, that neither the court nor trial counsel told him his BAC had to be taken within two hours of driving.  (Doc. 49-1, ECF p. 7).  The trial court issued a notice of intent to dismiss the petition as untimely under 42 Pa. Cons. Stat. Ann. § 9545(b), which generally requires a petition to be filed within one year of the conviction becoming final.  The trial court rejected the notion that the petition was timely under an exception for a claim based on facts that

---

[7]  Petitioner represents that he wanted trial counsel (or "plea counsel," as Petitioner calls him) to file the reconsideration motion but that trial counsel told him "his job was done." (Doc. 17, ECF p. 5, Petitioner's opposition to Respondents' motion to dismiss based on failure to exhaust).  It does appear that trial counsel withdrew his representation after sentencing. (Doc. 30-1, ECF p. 2, Respondents' "Note to the Court").

[8]  The trial court's docket indicates that Petitioner has continued to make other collateral filings, but those filings are not material to the 2254 petition.

were "unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Id.* § 9545(b)(1)(ii).  The court decided the facts could have been discovered earlier in the exercise of due diligence.  (Doc. 49-1, ECF pp. 15-18).  Petitioner had alleged he had discovered the facts underlying his claim when he received a copy of the criminal complaint from the office of the magisterial district judge on December 10, 2014.  (Doc. 49-1, p. 7).

On May 26, 2015, the trial court dismissed the petition.  (*Id.*, ECF p. 29).  Petitioner appealed the dismissal and that appeal is still pending.  *Commonwealth v. Saunders*, No. 1104 MDA 2015 (Pa. Super. Ct.).

III.   *Federal Habeas Review*

Under 28 U.S.C. § 2254, a state prisoner can seek federal habeas relief from his conviction only for violations of federal law, not for errors of state law.  *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011).  In pertinent part, as stated in 28 U.S.C. § 2254(a), the petitioner can seek relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, a federal court cannot grant habeas relief to a section 2254 petitioner unless the petitioner has exhausted the remedies "available" in state court on his federal claims.  *See* 28 U.S.C. § 2254(b)(1)(A); *Slutzker v. Johnson,* 393 F.3d 373, 379 (3d Cir. 2004)(citing section 2254(b)(1)(A)).  Exhaustion is accomplished "by fairly presenting each claim at each stage of the state's established appellate review process." *Villot v. Varner*, 373 F.3d 327, 337 (3d Cir. 2004).  On a Pennsylvania conviction, a

petitioner must present his claims as far as the Pennsylvania Superior Court because

Order 218, an administrative order from the Pennsylvania Supreme Court, has made

review in the state supreme court "unavailable for purposes of exhausting state court

remedies . . . ."  *Boyd v. Waymart,* 579 F.3d 330, 368 (3d Cir. 2009)(quoted case and

internal quotation marks omitted).

IV.   *Discussion*

> A.  *Ground One: Petitioner's Sentence Violates the Eighth
>      Amendment and the Due Process Clause of the Fourteenth
>      Amendment Because Petitioner Did Not Receive the Drug
>      and Alcohol Evaluation that State Law Required Before
>      Sentence Was Imposed*

Petitioner claims his sentence violates the Eighth Amendment and the Due

Process Clause of the Fourteenth Amendment because Petitioner did not receive the

drug and alcohol evaluation that state law required before he was sentenced.

On a conviction under 75 Pa. Cons. Stat. Ann. § 3802(c), "prior to

sentencing," a defendant "shall be evaluated . . . to determine the extent of the

defendant's involvement with alcohol or other drug and to assist the court in determining

what type of sentence would benefit the defendant and the public."  75 Pa. Cons. Stat.

Ann. § 3814(1).  A defendant on a section 3802(c) offense shall also "be subject to a full

assessment for alcohol and drug addiction" with the assessment including

recommendations for treatment.  *Id.* § 3814(2) and (4).  *See Commonwealth v.

Borovichka*, 18 A.3d 1242, 1255 (Pa. Super. Ct. 2011)(trial court erred in sentencing the

-10-

defendant before seeing the evaluations required by section 3814).  *See also*
*Commonwealth v. Taylor*, 104 A.3d 479, 494 (Pa. 2014)("we hold that a sentencing court
has no discretion or authority to impose a sentence for a DUI violation prior to the
completion of the Assessment required by Section 3814").

Respondents argue that Petitioner is entitled to no relief on this claim
because he failed to exhaust his state-court remedies on it.  They also argue that the
claim is really a state-law one which we are not authorized to address in federal habeas.

This claim could have been raised on direct appeal, but, as noted,
Petitioner took no direct appeal.[9]  Petitioner cannot now return to state court to complete
exhaustion because he no longer has available a state-court remedy.  The state courts
will not entertain another PCRA petition for at least one reason; any petition filed now
would be considered time-barred by the one-year statute of limitations under 42 Pa.
Cons. Stat. Ann § 9545(b)(1) for filing such petitions.

When "further state-court review is clearly foreclosed under state law,
exhaustion is excused on the grounds of futility."  *Wenger v. Frank,* 266 F.3d 218, 223
(3d Cir. 2001).  However, this does not mean that Petitioner is entitled to have his claim
adjudicated on the merits.  The claim is deemed exhausted only because Petitioner
committed a procedural default; he failed to present it to the superior court when he
should have.  To prevent section 2254 petitioners from avoiding the exhaustion

---

[9]  Petitioner asserts he did raise this claim in his first PCRA petition, but as we read
that petition, (Doc. 30-4, ECF pp. 6-7), while Petitioner did make a claim about his sentence, it
was based on state law.

requirement by failing to present their claims in state court, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999), federal courts do not consider procedurally defaulted claims.  There are two exceptions to this rule.  The merits of procedurally defaulted claims will be considered if the petitioner shows either: (1) cause and prejudice; or (2) a fundamental miscarriage of justice.  *See Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000).

   Petitioner argues he can meet the cause-and-prejudice standard since a defendant has a due-process right to effective assistance of counsel on direct appeal, *Ross v. Varano*, 712 F.3d 784, 788 n.1 (3d Cir. 2013), and trial counsel's failure to take a direct appeal to pursue this claim was not mere error but ineffective assistance.

   Counsel's ineffectiveness on direct appeal is cause to excuse a procedural default.  *See Fischetti v. Johnson*, 384 F.3d 140, 154 (3d Cir. 2004); *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000).[10]  The difficulty for Petitioner is that ineffective assistance of counsel in failing to raise a claim on direct appeal is itself a claim that must have been properly presented to the state courts and if it has not been, must also satisfy the cause and prejudice standard before the underlying claim can be considered on the merits.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000)(claim that direct-appeal counsel was ineffective in not making a claim that the evidence was insufficient to support the conviction could not

---

[10]  Petitioner does not rely on the fundamental-miscarriage-of-justice exception.  That exception is a claim of actual innocence.  *See House v. Bell*, 547 U.S. 518, 537, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006).

serve as cause to excuse the default of the underlying claim when the ineffectiveness claim was itself procedurally defaulted); *Parmelee v. Piazza*, 622 F. Supp. 2d 212, 222 (M.D. Pa. 2008)(failure to raise ineffective assistance of direct-appeal counsel in the petitioner's PCRA petition meant that this ineffectiveness claim could not be cause to excuse the underlying claims)(citing *Edwards*); *Willis v. Brooks*, No. 07-CV-2302, 2007 WL 3429802, at *3 (E.D. Pa. Nov. 14, 2007)(ineffective assistance of direct-appeal counsel cannot be cause to excuse the default of the underlying claim of mental incompetence unless the ineffectiveness claim was itself presented as an independent claim and exhausted in state court).  *See also Murray v. Carrier,* 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986).  Petitioner has therefore defaulted this claim.

Petitioner cannot rely on PCRA counsel ineffectiveness to establish cause, as *Martinez v. Ryan*, ____ U.S. ____, ____, 132 S.Ct. 1309, 1318, 182 L.Ed.2d 272 (2012), allows that only on an underlying claim of trial-counsel ineffectiveness, not one of trial court error.  *See Stroll v. Johnson*, C.A. No. 13-1675, 2013 WL 6074160, at *1 (3d Cir. 2013)(nonprecedential)(*Martinez* does not apply to a defaulted claim of judicial error concerning an improper jury instruction); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013)("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel")(refusing to apply *Martinez* to a claim that the petitioner was incompetent to be executed).

In any event, Petitioner cannot show cause for his procedural default by relying on counsel's ineffectiveness on direct appeal as he cannot show that trial counsel's performance was deficient in not pursuing on direct appeal a claim that the sentence violated the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment. Such a claim would not have succeeded.

A defendant has a due process right not to be sentenced on the basis of legal or factual error. *United States v. Mannino*, 212 F.3d 835, 846 (3d Cir. 2000). He also has an Eighth Amendment right against the imposition of an excessive sentence, but only in extraordinary cases. *Martinez v. Stridiron*, 538 F. App'x 184, 190-91 (3d Cir. 2013)(nonprecedential). However, "[a]s a general rule, a federal court will not review state sentencing determinations that fall within statutory limits." *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir. 1984); *Milton v. Graterford*, No. 09-CV-1477, 2010 WL 5060199, at *1 (M.D. Pa. Dec. 6, 2010); *Leary v. Kerestes*, No. 10-CV-5541, 2011 WL 5446839, at *5 (E.D. Pa. April 19, 2011)(magistrate judge's report adopted in 2011 WL 5446699); *Lucas v. Piazza*, No. 07-CV-3556, 2010 WL 3076194, at *4 (E.D. Pa. Aug. 5, 2010).

We can see no violation here of either of these constitutional rights. We begin by noting that Petitioner's sentence was not in excess of the statutory maximum for a violation of section 3802(c). The statutory maximum for that offense is five years. *See* 75 Pa. Cons. Stat. Ann. § 3803(b)(4) and 18 Pa. Cons. Stat. Ann. § 106(b)(6). The sentence was one to five years, so the statutory maximum was not exceeded. An Eighth

Amendment violation will generally not be found when the sentence is within the limits set by the legislature. *Stridiron*, *supra*, 538 F. App'x at 191. Petitioner's due process claim fails as well. Petitioner does not show how a legal or factual error on the court's part led to the sentence imposed. We note that trial counsel moved for sentencing immediately after Petitioner entered his guilty plea.

Petitioner argues his federal sentencing claim is valid under *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995), and *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), because Pennsylvania's DUI sentencing provisions create a liberty interest protected by due process in mandating that an assessment be done before sentence is imposed.

In *Walker*, the Ninth Circuit held that Nevada law created a liberty interest in sentencing procedures protected by due process by requiring a sentencing judge to make a finding that it was "just and proper" for a defendant to be considered an habitual offender before imposing an habitual offender sentence. 50 F.3d at 673. The court concluded that the petitioner was entitled to habeas relief because the sentencing court had not made the necessary finding. *Id.*

In making this ruling, the court relied on *Hicks*, and characterized *Hicks* as follows:

> In *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980), the Supreme Court held that state laws guaranteeing a defendant procedural rights at sentencing may create liberty interests protected against arbitrary deprivation by the due process clause of the Fourteenth Amendment. Therefore, when a state has

> provided a specific method for determining whether a certain
> sentence shall be imposed, "'it is not correct to say that the
> defendant's interest' in having that method adhered to 'is
> merely a matter of state procedural law.'" *Fetterly v. Paskett,*
> 997 F.2d 1295, 1300 (9th Cir. 1993)(citing *Hicks v.*
> *Oklahoma*), *cert. denied,* 513 U.S. 914, 115 S.Ct. 290, 130
> L.Ed.2d 205 (1994).

*Walker*, 50 F.3d at 673.

We are not bound by Ninth Circuit precedent, and we decline to follow

*Walker* in any event. *Hicks*'s holding is far narrower than portrayed by the Ninth Circuit.

In *Hicks*, an Oklahoma jury had been instructed that it had to impose a forty-year

sentence upon finding the defendant guilty of being an habitual offender when, under a

correct instruction, they could have imposed any sentence of not less than ten years.

*Hicks*, 447 U.S. at 346, 100 S.Ct. at 2229. The Oklahoma Court of Criminal Appeals held

that the defendant had not been prejudiced because the sentence was nonetheless

within the range of punishment that could have been imposed. *Id.* at 345, 100 S.Ct. at

2229. Conversely, the Supreme Court held that the sentence violated due process

because, when the jury was assigned the duty of imposing the sentence in the exercise

of its discretion, the defendant's liberty interest in freedom from confinement conferred on

him the right to the jury's exercise of that discretion. *Id.* at 346, 100 S.Ct. at 2229. The

Court said that this right to have the jury decide his sentence could not be denied "simply

on the frail conjecture that a jury *might* have imposed a sentence equally as harsh as that

mandated by the invalid habitual offender provision." *Id.*, 100 S.Ct. at 2229 (emphasis in

original).

-16-

Hicks is distinguishable from the case at bar.  Here, it was the trial court that had the authority to impose sentence, but it did not impose a sentence under the erroneous belief that it was the only sentence that could be imposed.  Instead, as the transcript of the oral guilty-plea colloquy indicates, the court  knew it could impose a range of sentences.  Thus *Hicks* does not apply here.  *See Johnson v. Rosemeyer*, 117 F.3d 104, 112 (3d Cir. 1997)(distinguishing *Hicks* by observing that the jury in *Hicks* "was in the same position as a judge who sentenced a defendant to a mandatory term of imprisonment without recognizing that the law did not require the imposition of that term. We think that a judicial error of that kind would violate a defendant's due process protections").

We also note that while we are not bound by Ninth Circuit precedent, we are bound by Third Circuit precedent.  In *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40 (3d Cir. 1984), the petitioner, a New Jersey convict serving a life sentence for murder, sought habeas relief, arguing that New Jersey law required reconsideration of his sentence "in light of a shorter sentence" given his co-defendant. *Id.* at 42-43.  The Third Circuit rejected the claim, noting in part that, even if true, the petitioner had no "due process right to the correct determination of state law." *Id.* at 43.

There is no ineffective assistance of counsel if an attorney fails to raise a meritless argument.  *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015). Petitioner therefore cannot establish cause for his procedural default of this claim, and we will deny this claim for failure to exhaust.

> B.  *Ground Two: The Trial Court Lacked Subject-Matter*
>     *Jurisdiction Over the Case Because Petitioner Had*
>     *Never Been Given a Copy of the "Criminal Affidavit"*
>     *Against Him So that He Could Have Known How His*
>     *Rights Were Violated*

Petitioner claims the trial court lacked subject-matter jurisdiction over the case because Petitioner had never been given a copy of the "criminal affidavit" against him so that he could have known how his rights were violated.

This claim was raised in the first PCRA petition, (Doc. 30-4, ECF p. 7), but Petitioner did not appeal from the denial of that petition.  Respondents thus argue the claim should be dismissed because it has not been exhausted.  (Doc. 13 ¶ 7).  Petitioner counters that he has cause for his procedural default: (1) he had not been sent notice of his right to appeal the denial (Doc. 17, ECF p. 2); (2) his PCRA counsel abandoned him (Doc. 34, ECF p. 7); and (3) Petitioner changed his address after he received the trial court's notice of intent to dismiss the PCRA petition and was not served with the dismissal order and notice of right to appeal.  (Doc. 47, ECF p. 12).

Since Petitioner admits he received the trial court's notice of intent to dismiss the petition, (Doc. 47, ECF p. 11), Petitioner has not established cause for his default.  The notice of intent to dismiss, filed January 15, 2013, advised Petitioner that the court intended to dismiss the PCRA petition and gave Petitioner twenty days to file a response to the notice.  (Doc. 30-4, ECF p. 27).  Petitioner thus knew that dismissal might occur in the near future.  When his address changed (and Petitioner does not assert he attempted to notify the court of that change), he took the chance that he might

not receive the dismissal order.  Cause must be some objective factor external to the

defense that impeded Petitioner's efforts to comply with the state's procedural rule.

*Murray, supra,* 477 U.S. at 488, 106 S.Ct. at 2645; *Leyva v. Williams,* 504 F.3d 357, 366

(3d Cir. 2007).  There was no external factor here.[11]

Nor can Petitioner rely on abandonment by his PCRA counsel.  The same

notice of intent to dismiss stated that PCRA counsel had filed a motion to withdraw.

(Doc. 30-4, ECF p. 24).  Petitioner acknowledges that counsel was allowed to withdraw

by order of January 15, 2013.  (Doc. 47, ECF p. 18, order permitting withdrawal).  In

these circumstances, Petitioner cannot rely upon abandonment by counsel to satisfy the

cause prong.  *Compare Maples v. Thomas*, ____ U.S. ____, ____, 132 S.Ct. 912, 924-927,

181 L.Ed.2d 807 (2012)(cause for procedural default established when counsel

abandoned the petitioner without withdrawing as counsel and when the petitioner had no

notice that counsel would no longer act as his lawyers).

This claim will be dismissed for failure to exhaust.

---

[11]  Ineffective assistance of postconviction counsel in an initial-review collateral proceeding in failing to raise a claim of ineffective assistance of trial counsel may constitute cause to excuse a procedural default.  *Martinez, supra,* ____ U.S. at ____, 132 S.Ct. at 1318. A failure on the part of a petitioner proceeding pro se to raise such a claim may also constitute cause.  *Id.*  Here, however, we do not deal with trial counsel ineffectiveness.  Further, we deal with a claim that was made in the PCRA petition.  *Martinez* does not apply to a failure to appeal denial of a PCRA claim.  *Id.* at ____, 132 S.Ct. at 1320; *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015).

C. *Ground Three: Trial Counsel Was Ineffective in Not*
*Providing Petitioner with a Requested Copy of the*
*Affidavit of Probable Cause*

Petitioner claims that trial counsel was ineffective in not providing Petitioner

with a requested copy of the affidavit of probable cause. In support of this claim,

Petitioner alleges that he only pled guilty when he realized that he was not going to get a

copy of anything or a fair trial. (Doc. 1, ECF p. 8).

This claim was essentially raised in Petitioner's first PCRA petition (Doc.

30-4, ECF p. 7), and Petitioner did not appeal from the denial of that petition.

Respondents argue the claim should therefore be dismissed because it has not been

exhausted. In opposition, Petitioner makes the same arguments to excuse default as he

made in regard to Ground Two. For the reasons discussed above, we reject Petitioner's

argument and will deny this claim for failure to exhaust.

D. *Ground Four: Petitioner's Guilty Plea Is Invalid for*
*Two Reasons: (1) There Was No Subject-Matter*
*Jurisdiction Based on the Lack of Service of the*
*Criminal Affidavit; and (2) Petitioner Waived His*
*Right to a Preliminary Hearing in Return for a Plea*
*of Guilty to a First Offense DUI, But at the Guilty Plea*
*Hearing It Was Changed to a Second Offense DUI*
*With No Amendment Prior to the Plea or on the Record*

Petitioner claims his guilty plea is invalid for two reasons: (1) there was no

subject-matter jurisdiction based on the lack of service of the criminal affidavit; and (2)

Petitioner waived his right to a preliminary hearing in return for a plea of guilty to a first

-20-

offense DUI, but at the guilty-plea hearing it was changed to a second offense DUI with no amendment prior to the plea or on the record.

Respondents argue that Petitioner failed to exhaust his state-court remedies on this claim and that it thus cannot be considered on the merits.  Petitioner says that this ground could have been raised on direct appeal, (Doc. 47, ECF pp. 1-2), and that the failure to provide him with counsel to pursue a direct appeal constitutes cause to excuse his procedural default.

Both parts of this claim are the type of claim more properly raised in postconviction proceedings as both would have required additional evidence.  In any event, Petitioner did essentially raised both parts of this claim in his first PCRA petition (Doc. 30-4, ECF pp. 6 and 7) but failed to appeal the trial court's denial to the superior court.  Petitioner therefore cannot show cause for his default and this claim will be denied for failure to exhaust.

We add that the second part of this claim lacks merit.  The record does indicate Petitioner agreed to plead guilty to a second offense DUI.  In the written guilty-plea colloquy form, Petitioner acknowledged his plea agreement with the district attorney was to plead to "DUI Tier 3 – 2nd" with "[a]ll other charges dismissed."  (Doc. 30-1, ECF p. 2).  He also acknowledged the district attorney had made him no other promises in exchange for his guilty plea.  (*Id.*, ECF p. 3).  In his oral guilty-plea proceedings, the prosecutor also indicated that Petitioner would be entering a guilty plea to "DUI, a second offense, tier three . . ."  (Doc. 30-2, ECF p. 3).

E.  *Ground Five: the Court Never Told Petitioner During
the Oral Guilty-Plea Colloquy that the Commonwealth
Had to Prove that (a) His BAC Was at Least 0.16% Within
Two Hours of Driving and (b) He Had Driven, Operated and
Was in Physical Control of a Motor Vehicle*

Petitioner claims the court never told him during the oral guilty-plea colloquy

that the Commonwealth had to prove that (a) his BAC was at least 0.16% within two

hours of driving and (b) he had driven, operated and was in physical control of a motor

vehicle.  Petitioner contends that due process required that the court advise him of this

critical element of the offense to which he was pleading guilty.  (Doc. 34, ECF p. 9).

Both parties agree this claim could have been raised on direct appeal but

was not.  It has therefore been procedurally defaulted.  Respondents thus argue we

cannot consider it because Petitioner cannot show cause to excuse the procedural

default as the failure to appeal is based merely on trial counsel error, not ineffectiveness,

which is not enough to establish cause, citing *Murray, supra,* 477 U.S. at 488, 106 S.Ct.

at 2645.

Petitioner responds that we can consider the claim, viewing trial counsel's

failure to take a direct appeal to pursue this claim not as mere error but as ineffective

assistance of counsel on direct appeal.  As noted, such ineffectiveness is cause to

excuse a procedural default.  *See Fischetti, supra,* 384 F.3d at 154; *Mannino*, *supra*, 212

F.3d at 840.  Petitioner also asserts he can show the necessary prejudice as well.

We are not as sure as the parties that this claim could have been raised on

direct appeal as it appears to be one that challenges the validity of the guilty plea and

hence would  require examination of evidence outside the record.  *See Hill v. Beyer*, 62

F.3d 474, 481 (3d Cir. 1995).  The claim would therefore have to have been presented in

the first PCRA proceedings, which Petitioner failed to do.  He has therefore defaulted the

claim.  Petitioner's argument that trial counsel provided ineffective assistance of counsel

in connection with a direct appeal does not assist Petitioner because, as noted, such a

claim must first be presented as an ineffectiveness claim in the PCRA proceedings,

which Petitioner also failed to do.  *See Murray*, *supra*, 477 U.S. at 488-89, 106 S.Ct. at

2645-46.

Nor can Petitioner rely on PCRA counsel ineffectiveness to establish cause.

As noted, under *Martinez, supra,* ____ U.S. at ____, 132 S.Ct. at 1318, such reliance is

only permitted on an underlying claim of trial-counsel ineffectiveness, not one of trial

court error.  *See Stroll, supra,* 2013 WL 6074160, at *1; *Gore, supra,* 720 F.3d at 816.

F.  *Ground Six: Neither the Court Nor Trial Counsel Told
Petitioner His BAC Had to be Taken Within Two Hours of
Driving*

Petitioner claims that his guilty plea is invalid because neither the court nor

trial counsel told him his BAC had to be taken within two hours of driving.  (Doc. 36, ECF

p. 3).  In fact, trial counsel told Petitioner that there was no time limitation on when blood

could be drawn for testing.  (Doc. 34, ECF p. 7).

We provide some background.  Petitioner pled guilty to a violation of 75 Pa.

Cons. Stat. Ann. § 3802(c), described as "highest rate of alcohol," and which applies in

relevant part, if "the alcohol concentration in the individual's blood or breath is 0.16% or

higher within two hours after the individual has" driven a motor vehicle.  *Id.*  In light of

section 3802(g), not only does the blood alcohol concentration have to be .16% or higher

within two hours of driving, but the blood sample upon which the measurement is based

must also have been drawn within two hours of having driven or operated a vehicle.  If

the blood was not drawn within that two-hour period, the Commonwealth must show good

cause why it was not.[12]  *See Commonwealth v. McNair*, 8 Pa. D.&C.5th 262, 267-68 (Pa.

Ct. Com. Pl. Fayette Cnty. 2009); *Commonwealth v. Fusco*, 2 Pa. D.&C.5th 431, 432 (Pa.

Ct. Com. Pl. Centre Cnty. 2008); *Commonwealth v. Hill*, 2007 Pa. Dist. & Cnty. Dec.

Lexis 181, at *10-12 (Pa. Ct. Com. Pl. Berks Cnty. 2007).  *See also Commonwealth v.

Bradwell*, 2015 Pa. Super. Unpub. Lexis 435, at *13 (Pa. Super. Ct. 2015)

(nonprecedential)(noting that allowing into evidence the results of a blood test based on a

---

[12]  In relevant part, subsection (g) provides as follows:

**(g) Exception to two-hour rule**.--Notwithstanding the provisions of subsection (a), (b), (c) . . . where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:

(1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and

(2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

blood sample drawn outside the two-hour limit without requiring the Commonwealth to show good cause would nullify subsection 3802(g))*; Commonwealth v. Beshore*, 916 A.2d 1128, 1138-39 & n.3 (Pa. Super. Ct. 2007)(noting that the test has to be performed within two hours and the exception to that rule in subsection (g)).[13]

In the instant case, the complaint charged that Petitioner's blood alcohol content (BAC) "was 0.206% at 20 November 2010/0313 hrs," (Doc. 36, ECF p. 6), and the affidavit of probable cause attached to the complaint alleged Petitioner was driving through an intersection at 01:05. (*Id.*, ECF p. 8). The parties agree that this means the blood was drawn eight minutes after the two-hour period expired.[14] Petitioner thus argues his plea was invalid because he did not know that the Commonwealth had to show good cause for the late blood draw if it wanted to prosecute him for a section 3802(c) offense.

In opposition to this claim, Respondents first argue that Petitioner has to exhaust his remedies in the state courts before he can have it decided in federal habeas

---

[13] *Bradwell* puts it this way in the context of a section 3208(c) offense:

> The plain language of these two provisions [sections 3208(c) and 3208(g)] establishes a two-tier approach pursuant to which the Commonwealth may prove beyond a reasonable doubt that a driver had a BAC of .16% or higher. The Commonwealth can prove the BAC either: (1) with test results derived from a sample drawn within two hours of the suspect driving the vehicle; or (2) with a sample drawn after the passage of two hours, provided there exists good cause for the delay.

2015 Pa. Super. Unpub. Lexis, at *10-11 (brackets added).

[14] We note that the Information alleged the "BAC was .206% at 1:05 a.m. on November 20, 2010." (Doc. 49-1, ECF p. 3).

and that the claim is the subject of an appeal Petitioner has pending in the Pennsylvania Superior Court from the denial of his third PCRA petition.  Respondents assert we should await a ruling from the superior court before ruling on this claim.

We decline to await a ruling from the superior court.  As noted above, when "further state-court review is clearly foreclosed under state law, exhaustion is excused on the grounds of futility."  *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001).  A federal court often decides that exhaustion would be futile based on its own prediction of whether a state court would entertain a challenge to a state conviction if the petitioner were to return to state court.  We do not think that approach should change when the petitioner has pending an appeal from a ruling of the trial court that state-court review of the claim is barred by the statute of limitations, a ruling based on what appears to be a solid analysis of the limitations issue.  We therefore conclude that exhaustion of this claim is not necessary as it would be futile.  Of course, as also noted above, Petitioner's failure to exhaust this claim does not mean we should rule on its merits.  By failing to exhaust, he has procedurally defaulted the claim, and he must therefore show cause and prejudice before we can adjudicate it on the merits.

The claim is that both the trial court and trial counsel failed to tell Petitioner that before he could be convicted of a section 3802(c) offense, his blood had to be drawn within two hours of driving, or if the blood was not drawn within two hours, the Commonwealth had to show good cause why it was not drawn within that period.  We will deal first with that part of the claim directed against the trial court.

Petitioner takes the position that this claim could have been raised on direct appeal but was not, so that ineffective assistance of trial counsel in failing to take a direct appeal is cause to excuse the procedural default.  As noted above, ineffective assistance of counsel on direct appeal can be cause to excuse a procedural default.  *Fischetti, supra,* 384 F.3d at 154; *Mannino, supra*, 212 F.3d at 840.  The court agrees that this claim could have been raised on direct appeal.  However, as also noted above, ineffective assistance of counsel in failing to raise a claim on direct appeal is itself a claim that must have been properly presented to the state courts and if it has not been, must also satisfy the cause-and-prejudice standard before the underlying claim can be considered on the merits.  *See Edwards, supra,* 529 U.S. at 450-51, 120 S.Ct. at 1591; *Parmalee, supra,* 622 F. Supp. 2d at 222; *Willis, supra,* 2007 WL 3429802, at *3.

We therefore cannot entertain the claim that the trial court failed to tell him his BAC had to be taken within two hours of driving as Petitioner has procedurally defaulted the claim.  We note that *Martinez, supra,* does not assist him in showing cause for the default by relying on the ineffectiveness of postconviction counsel in failing to raise the claim of trial court error.  As noted above, *Martinez* applies only to underlying claims of trial counsel error.  *See Stroll, supra,* 2013 WL 6074160, at *1; *Gore, supra,* 720 F.3d at 816.

We turn now to that part of the claim asserting that trial counsel failed to tell him his BAC had to be taken within two hours of driving.  We think this claim can be fairly construed as one for ineffective assistance of counsel since Petitioner avers his lawyer

failed to advise him of crucial information necessary to the decision to plead guilty or not.[15]  This claim was procedurally defaulted and Petitioner attempts to excuse the default by relying on the ineffectiveness of direct-appeal counsel in not raising it on direct appeal, even though trial counsel was the counsel Petitioner expected to pursue a direct appeal.

In any event, this claim should have been brought in Petitioner's first PCRA proceedings as it would have required, as noted above, examination of matters outside the proceedings leading to the guilty plea.  However, here, unlike the claim of trial court error, Petitioner can use *Martinez* to rely on ineffectiveness of PCRA counsel to establish cause for the default as the underlying claim is trial counsel error.

*Martinez* created a "narrow exception" to the rule in *Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 2566-67, 115 L.Ed.2d 640 (1991), that an attorney's errors in postconviction proceedings cannot be cause to excuse a procedural default.  *Martinez*, *supra*, ____ U.S. ____, ____, 132 S.Ct. at 1315.  The Supreme Court held: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Id.* at ____, 132 S.Ct. at 1315.

---

[15]  We construe the claim this way because Petitioner is proceeding pro se.  And if the claim were construed as a due-process claim, *see Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)(the validity of a guilty plea involves a defendant's right to due process), the only other federal basis for the claim, it is procedurally defaulted as it would not involve trial counsel error.

Petitioner's first PCRA proceedings qualify as initial-review collateral proceedings.  *See Cox v. Horn*, 757 F.3d 113, 24 n.8 (3d Cir. 2014).  Under *Martinez*, a petitioner can establish cause to excuse a default if: (1) postconviction counsel at the initial review collateral proceedings was ineffective under the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) the underlying claim of ineffective assistance of trial counsel "is a substantial one," meaning "the claim has some merit."  *Martinez*, ____ U.S. ____, 132 S.Ct. at 1318.  *See also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

*Martinez* analogized the second part of this test to deciding whether to grant a certificate of appealability in a habeas action, ____ U.S. at ____, 132 S.Ct. at 1318-19, so the underlying claim can be said to have some merit if reasonable jurists would find the claim debatable.  *Valentin-Morales v. Mooney*, No. 13-CV-3271, 2015 WL 617316, at *4 (E.D. Pa. Feb. 11, 2015)(citing *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003)(cited in *Martinez*)).  *See also Cox*, *supra*, 757 F.3d at 119 (observing that the "some merit" part is "analogous to the substantiality requirement for a certificate of appealability")(citing *Martinez*).

There is some merit to the underlying claim of trial-counsel ineffectiveness. The blood sample was drawn eight minutes after the two-hour period elapsed.  In these circumstances, the Commonwealth had to establish good cause for the late draw if it was going to convict Petitioner of the section 3802(c) offense.  Respondents argue there was good cause for the delay because it was not "inordinate," as the eight minutes was only

"slightly over the two-hour rule."  (Doc. 49, Respts' Reply Br. at ECF p. 8).  As part of this

argument, Respondents paraphrase from the affidavit of probable cause the arresting

officer's description of events leading to the arrest.  The officer stopped Petitioner after

observing the car traveling at a high rate of speed with improperly working tail lights.

> [T]he officer spoke with [Petitioner] long enough to detect an
> odor of alcohol on his breath, slurred speech, and an inability
> to properly answer the officer's questions. (Affidavit of
> Probable Cause, p. 1)(Doc. 36 at 8).  The officer asked
> Petitioner to step out of the vehicle to perform a field sobriety
> test, which Petitioner agreed to.  *Id.*  The officer instructed
> Petitioner on how to perform each test and administered a
> number of field sobriety tests.  *Id.* at 1-2.  (Doc. 36 at 8-9).  He
> then placed Petitioner in custody for suspicion of DUI,
> handcuffing him.  *Id.* at 2.  (Doc. 36 at 9).  After Petitioner
> agreed to submit to a BAC, he was transported to the
> Lackawanna County DUI Center.  *Id.*

(*Id.*, ECF p. 8).  Respondents conclude that "[a]pparently, this process took two hours

and eight minutes," (*id.*), and so therefore there was good cause.

We cannot agree with Respondents' reasoning that there was good cause

because the delay of eight minutes was not inordinate.  The statutory provisions establish

the rule as two hours.  To allow a blood draw after that period on the basis that the delay

was not inordinate would nullify section 3802(g) and its requirement that a sample drawn

after two hours must be for good cause.  The statute already provides for those cases

when the blood is not drawn within two hours; if it was not, the case can continue if good

cause is shown for the late draw.

Nor does this particular recitation of the time line of events persuade us.  A

review of the cases dealing with good cause indicates that a description of events leading

to the blood draw is sufficient to show good cause when the description establishes that all the time elapsed was for a good reason.[16]  For example, in *Hill*, *supra*, good cause was found for a blood draw seventeen minutes after the two-hour deadline when the Commonwealth showed: the accident occurred sometime around 8:00 p.m.; the trooper was dispatched shortly after the accident (meaning after the vehicle was driven) and arrived some twenty minutes later; the trooper noticed signs that the defendant was intoxicated; the defendant failed several field sobriety tests; the trooper transported the defendant to the DUI center, some thirty-four miles from the scene and about forty-seven minutes of travel time; and the blood was drawn at about 10:23 p.m.  *Hill*, *supra*, 2007 Pa. Dist. & Cnty. Dec. Lexis 181, at *10-12.  In *McNair*, there was good cause when in part one person involved in the accident delayed calling the police for fifteen minutes and the officer was not notified until about an hour after the latest time the accident was estimated to have occurred.  *McNair*, 8 Pa. D.&C.5th at 268-69.  As put by the superior court in *Commonwealth v. Dye*, 2015 Pa. Super. Unpub. Lexis 283, at *9 (Pa. Super. Ct. 2015)(nonprecedential), a sufficiently specific time line also describing valid reasons for the time elapsed such as travel distances and time for investigations will establish good cause.

Here, the time line is not sufficiently specific concerning valid reasons for the delay.  Travel distance to the scene is not an issue as the officer stopped Petitioner

---

[16]  Whether Petitioner consumed alcohol after his operation of the vehicle is not an issue here.

after observing him on the street.  There is no estimate of the time involved in

investigating whether Petitioner was intoxicated and in administering the field sobriety

tests.  There is no estimate of the distance to the DUI center or the travel time to the

center.  There is only the time when Petitioner was driving the vehicle when the officer

stopped him, 1:05 a.m., and the time when the blood was drawn, 3:13 a.m.  This

indicates Petitioner has a meritorious claim of ineffectiveness against his trial counsel.

We turn now to the other prong of the cause analysis, whether PCRA

counsel was ineffective under *Strickland* in the first PCRA proceedings.  *Strickland* sets

forth a two-prong test to establish ineffectiveness.  First, counsel's performance must be

deficient.  *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*).  Second,

counsel's deficient performance must have prejudiced the defense.  *Id.* (quoting

*Strickland*).  A petitioner must "show 'that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Id.* at 105 (quoting *Strickland*).

We believe this prong of the cause analysis is satisfied as well.  As the

Commonwealth could not show good cause, PCRA counsel's conduct was deficient in

not raising trial counsel's failure to raise the lack of good cause.  For the same reason,

*Strickland*'s second prong is satisfied as it appears that the outcome of the PCRA

proceedings would have been different if trial counsel's ineffectiveness had been raised

there.  We note that a review of the criminal complaint would have revealed the violation

of the two-hour rule.

However, Petitioner has not overcome his procedural default yet.  He must also show prejudice.  To show prejudice in the context of procedural default, "the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000)(quoting *Murray*, *supra*, 477 U.S. at 494, 106 S.Ct. at 2648).  When the underlying claim is for ineffective assistance of counsel, the Third Circuit uses *Strickland*'s prejudice prong and finds prejudice to excuse a procedural default if there is a reasonable probability that the result of the trial court proceedings would have been different.  *Werts*, 228 F.3d at 193.  Here, we add a further refinement.  The ineffectiveness claim is being made in the context of a guilty plea.  To establish prejudice in this context, we borrow *Strickland*'s standard for establishing prejudice in connection with a guilty plea: Petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015)(quoted case omitted).

Petitioner has not argued there is a reasonable probability he would not have pleaded guilty if trial counsel had told him that the blood had to have been drawn within two hours of driving.  However, we will not dismiss this claim.  We will instead allow him to file a supplemental brief addressing the prejudice issue.

G.  *Ground Seven: Petitioner Did Not Understand the Nature
of the Charge to Which He Was Pleading Guilty Because
He Did  Not Receive the Criminal Complaint Against Him*

Petitioner claims he did not understand the nature of the charge to which he was pleading guilty because he did not receive the criminal complaint against him.  (Doc. 34, ECF p. 11).

Respondents contend that Petitioner raised this claim in his first PCRA petition and that he has not exhausted it because he failed to appeal the denial of the PCRA petition.  Petitioner counters that it could have been raised on direct appeal and that ineffective assistance of direct appeal counsel is cause that excuses the default.

This claim could not have been raised on direct appeal as matters outside the record would have been needed to resolve it.  Respondents correctly assert it was raised in the first PCRA petition, (Doc. 30-4, ECF pp. 6, 7), but Petitioner did not appeal from the denial of that petition.  Petitioner has therefore procedurally defaulted the claim, and we cannot consider it as he has not shown cause to excuse the default.  *See Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015).

H.  *Ground Eight: The Commonwealth Breached the Plea
Agreement It Made with Petitioner*

Petitioner claims the Commonwealth breached the plea agreement it made with him.  *See United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005).  Petitioner asserts that the Commonwealth agreed to drop the charge of driving with a suspended

license if Petitioner agreed to plead guilty to DUI first offense but he was instead sentenced to a DUI second offense.  (Doc. 34, ECF p. 10).

Contrary to Petitioner's contention, this claim could not have been raised on direct appeal as matters outside the record would have been needed to resolve it.  It was not raised in the first PCRA petition.  We cannot consider it because it has  been procedurally defaulted, and Petitioner has not shown cause to excuse the default. Martinez does not assist Petitioner as this is not a claim of trial counsel error.  *See Stroll, supra,* 2013 WL 6074160, at *1; *Gore, supra,* 720 F.3d at 816.

I. *Ground Nine: Petitioner's Trial Counsel Was Ineffective Because He Did Not Allow Defendant to See the Criminal Complaint so that Petitioner Could See If It Was Filed Within Five Days of His Release*

Petitioner claims his trial counsel was ineffective because he did not allow Petitioner to see the criminal complaint so that he could determine if it was filed within five days of his release.  (Doc. 36, ECF p. 2).

Pa. R. Crim. P. 519(B)(1)(a) and subsection (B)(2) require an arresting officer to release a defendant charged with a qualifying section 3802 offense and to file the criminal complaint within five days of his release.[17]  Petitioner's offense qualifies, and as noted, the arrest happened on November 20, 2010, and the complaint was not filed until April 26, 2011.  Petitioner contends that if counsel had let him see the complaint, he

---

[17]  Release here means Petitioner's release from the custody of the arresting officer. As Petitioner notes, he was confined in the Lackawanna County prison after his release as his DUI offense was considered a violation of the parole he was then serving.

could have argued at his preliminary hearing that he was prejudiced by the late filing. Petitioner was entitled to have the late-filed complaint dismissed if he could have shown prejudice from the delay in filing.  *See Commonwealth v. Bowman*, 2015 WL 6689578, at *8 (Pa. Super. Ct. 2015)(nonprecedential).

This claim was not raised in the first PCRA petition, and it has been procedurally defaulted.  Petitioner relies on *Martinez*, *supra*, to show cause for the default, asserting that PCRA counsel was ineffective in not raising in the PCRA proceedings trial counsel's ineffectiveness.

As noted, under *Martinez*, a petitioner can establish cause to excuse a default if: (1) postconviction counsel at the initial review collateral proceedings was ineffective under the standards set forth in *Strickland*, *supra*, and (2) the underlying claim of ineffective assistance of trial counsel "is a substantial one," meaning "the claim has some merit."  *Martinez*, ____ U.S. at ____, 132 S.Ct. at 1318.

Petitioner cannot establish cause (and hence cannot excuse his default) because the underlying claim lacks merit.  Petitioner asserts that, absent trial counsel ineffectiveness, he could have shown prejudice from the late filing of the complaint.  He alleges that during the delay in filing the complaint the passenger in his car at the time of his arrest "had moved and was unable to be located" by the time of the preliminary hearing.  (Doc. 36, ECF p. 2).  Petitioner had "lost contact" with the passenger, who "had changed his address and phone number."  (Doc. 47, ECF p. 16).  The passenger could have rebutted at the preliminary hearing material parts of the officer's narrative

-36-

concerning the arrest, including allegations that Petitioner was intoxicated.  The

passenger's testimony could have shown there was no probable cause to stop

Petitioner's car and that the charges should have been dismissed for lack of a prima facie

case.  (*Id.*).  Petitioner also asserts he was prejudiced because he could have had the

charge of driving while operating privileges were suspended dismissed as filed beyond

the statute of limitations but  instead he had to plead guilty to that charge.  (Doc. 36, ECF

p. 2).

Trial counsel would not have succeeded if he had argued at the preliminary

hearing that Petitioner was prejudiced because the passenger was unavailable.  The

claim is essentially that the passenger was unavailable because he had changed his

address and phone or that Petitioner had lost track of him.  This does not mean that the

witness was unable to be located.  Additionally, Petitioner appears to be arguing that the

passenger would have been used as part of a motion to suppress based on a lack of

probable cause.  However, Petitioner did not file a suppression motion in state court and

whether such a motion should have been filed is not a part of the habeas proceedings

before this court.  Further, the passenger's testimony would not have led to a dismissal of

the charges in relation to the Commonwealth's prima facie case as the Commonwealth's

burden in establishing a prima facie case is not to prove a defendant's guilt, only to show

there is sufficient evidence to show that a crime was committed.  *Commonwealth v.

Sanchez*, 623 Pa. 253, 322, 82 A.3d 943, 984 (2013).  Finally, we do not understand the

claim of prejudice related to the charge of driving while operating privileges were

suspended as that charge was nolle prossed; Petitioner did not plead guilty to that charge.

IV.   *Conclusion*

We will issue an order allowing Petitioner to file a supplemental brief addressing whether he can excuse his procedural default on Ground Six, specifically, whether he can meet the prejudice prong of the cause-and-prejudice standard by showing there is a reasonable probability he would not have pleaded guilty if trial counsel had told him that the blood had to have been drawn within two hours of driving. Respondents may file an opposition brief, which may also raise any other  arguments why Ground Six lacks merit or that Petitioner otherwise not entitled to relief on the claim. Petitioner will be given an opportunity to file a reply brief.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: December 3, 2015